UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TOMMY AURTHOR DAILEY,

Plaintiff,

v.

KIM CHURCHWARD, MALLORY
KUTER, BETHANY HUGHES, SHAWN
ALLEN, SAMUEL KEIRNS,

Defendants.

CAUSE NO. 3:25-CV-976-GSL-APR

OPINION AND ORDER

Tommy Aurthor Dailey, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On March 11, 2024, Dailey arrived at the Allen County Community Corrections Residential Facility (the Facility) to serve the remainder of his Indiana Department of Correction (IDOC) commitment/sentence. He was given an orientation during which he met with his case manager, Bethany Hughes, read the contract, and agreed to participate in the Facility's re-entry program including the "Residential Service Rules

and conditions." ECF 1 at 3. Dailey was assigned classes at the Facility, was placed in the "Blue Jacket" program, and obtained temporary employment. *Id*. Dailey claims he "successfully completed" the classes and programs and "paid his fees in the amount he could afford." *Id*. When his employment ended, however, he lost 30-days of good time credit "for missing two busses back to the facility," which pushed his Earliest Projected Release Date (EPRD) back to May 23, 2025. *Id*.

Dailey claims his IDOC sentence was "fully served" on May 23, 2025. *Id*. at 4. His GPS tracking monitor was removed from his ankle; however, he was informed he "couldn't leave" the Facility until he found suitable housing. *Id*. Dailey admits Magistrate Samuel Keirns issued a court order to keep him "confined in the Facility without a GPS monitor until suitable housing is obtained." *Id*. Dailey asked Case Manager Hughes if he could be released to a hotel or the Allen County Rescue Mission, but she refused. She also refused to provide him with a copy of the contract he had signed upon his arrival. Dailey escalated the situation to Supervisor Mallory Kuter, but she also refused to give him a copy of the contract and, instead, told him to address the matter in court. Dailey then wrote to Kim Churchward, the Executive Director of the Facility. Instead of meeting with Director Churchward, Dailey ended up speaking with attorney from "re-entry court" who told Dailey he could be "violated and sent back to the D.O.C. for not having suitable housing and not being able to pay fees." *Id*. at 5. Case Manager Hughes continued to "threaten to violate his probation" when he continually asked to be released. *Id*.

2

At some point—he doesn't say when—Dailey informed his new case manager, Shawn Allen, that he had found "suitable housing," and Case Manager Allen "put his release in progress." *Id.* at 7. However, Case Manager Allen asked the court to "keep Tommy Dailey on the program until his fees are paid." *Id.* Dailey takes issue with the fact that he was "doing his probation while still confined at the residential facility." *Id.* Case Manager Hughes then formally filed an "Amended Verified Petition for Revocation of Placement in Re-entry Court Program." *Id.* at 8. Dailey believes this petition was invalid. He has sued Executive Director Kim Churchward, Case Manager Supervisor Mallory Kuter, Case Manager Bethany Hughes, Case Manager Shawn Allen, and Magistrate Judge Samuel Keirns for $200,000.00 for "holding him past his commitment date denying Tommy Dailey to revisit his contract for re-entry and not following the re-entry D.O.C. release from commitment policy." *Id.*

"Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016). However, a review of the publicly available state court docket shows Dailey's allegations do not accurately characterize the record,[1] so this claim is inapplicable. On June 29, 2023, Dailey received a four-year sentence for failure to register as a sex offender or violent offender. *See* https://public.courts.in.gov/mycase (last visited Jul. 22, 2026). Specifically, the judge ordered that Dailey was to be:

> committed to the Indiana Department of Correction for classification and confinement for a period of 4 years, provided, however, that 2 years of said sentence is ordered executed and the remainder of 2 years is ordered

suspended and Defendant placed on active adult probation for 2 years, subject to the standard conditions of probation and special conditions of probation executed this date and filed herein. User's Fees assessed.

*Id*. He was granted credit for 116 days served in jail. *Id*.  On March 7, 2024, he was granted placement in the community transition program, and on March 18, 2024, Magistrate Keirns granted his acceptance into re-entry court. *Id*. On May 17, 2024, Magistrate Keirns issued an order stating, "[T]he Defendant shall reside at Allen County Community Corrections Residential Services off of electronic monitoring as a condition of Re-Entry Court until such time as suitable housing is obtained." *Id*.[1] After multiple violations and several short stints in the Allen County Jail, formal petitions to revoke were filed and later amended beginning in early June through August of 2025. *Id*. Magistrate Keirns found probable cause existed and issued warrants for Dailey's arrest. *Id*. On August 21, 2025, Magistrate Keirns revoked Dailey's probation and sentenced him to two years in the Indiana Department of Correction with 44 days of jail credit given. *Id*. The order states, "Defendant having previously been advised of his/her rights, Defendant waives those rights and admits to the allegations of the Petition for Revocation of Probation/Work  Release/Home Detention. Placement/suspended portion revoked." *Id*. Dailey was then removed from the re-entry court program. *Id*. As of the date of this order, that amended sentence remains intact. *Id*.

Based on this record, Dailey's civil rights lawsuit cannot proceed. Although he characterizes his claims as a constitutional violation for allegedly being held past his

---

[1] The order was docketed on May 23, 2024.

release date, what he is really doing is challenging his sentence and its terms—

including the details of his supervised release/probation/parole. In an analogous case

in the Northern District of Illinois, a plaintiff brought a similar claim, which was

dismissed by the court in a well-reasoned opinion:

> The claims Stokes seeks to bring in this civil lawsuit—*i.e.*, a challenge to a period of imprisonment after his original release date and his ongoing MSR [mandatory supervised release]—suffer from a fatal flaw. The Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), that a plaintiff cannot recover damages for an allegedly unconstitutional imprisonment unless 'the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' In *Edwards v. Balisok*, 520 U.S. 641 (1997), the rule articulated in *Heck* was extended to decisions in prison proceedings.
>
> In light of *Heck*, Stokes cannot recover damages for the time he was imprisoned following his original release date unless or until the imprisonment is declared invalid by an appropriate tribunal. This is so whether the claim about that period of incarceration is viewed as arising from the revocation of his MSR and recalculation of his release date, *see Lacey v. Unknown Parole Agent*, No. 12 C 9406, 2012 WL 6217529, *2 (N.D. Ill. Dec. 12, 2012) (Tharp, J.) (concluding that claim under § 1983 for wrongful revocation of MSR barred unless or until PRB ruling overturned), or from imposition of conditions on his MSR that made it difficult for him to secure transitional housing, *see William v. Wisconsin*, 336 F.3d 576, 579–80 (7th Cir. 2003) (explaining that challenges to conditions of probation must be brought in petition for writ of habeas corpus).
>
> A petition for a writ of habeas corpus is the proper route whether a 'prisoner is seeking . . . outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation.' *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (collecting cases); *see Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973). The reason for this restriction is the 'need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily

> implies the unlawfulness of the State's custody.' *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original). Thus, a state prisoner's claim under § 1983 is 'barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.' *Id.* at 82 (emphasis in original).

*Stokes v. Garnett*, No. 24 C 3716, 2025 WL 580863, at *2 (N.D. Ill. Feb. 21, 2025).[2] In other words, "[c]hallenges to conditions of confinement (such as pollution in the prison or deliberate indifference to serious medical needs) fall under § 1983" while "[a]ttacks on the fact or duration of the confinement come under § 2254." *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003) (citations omitted). Likewise, parolees are "in custody" because the conditions/requirements they must abide by "*are* the confinement." *Id.* (emphasis in original); *see also Pettis v. U.S.*, 129 F.4th 1057, 1061 (7th Cir. 2025) ("[A] term of supervised release is considered part of a defendant's sentence.").

Here, Dailey remained "in custody" throughout the duration of the events in question—whether in the Indiana Department of Correction, in the Allen County Jail, in the Facility, on house arrest, or on probation/parole. Indeed, he is still "in custody." Thus, to the extent Dailey is challenging the validity of his confinement or the conditions of his parole, he must do so in a habeas proceeding and cannot "short-circuit" the correct process by bringing a §1983 claim. *See Stokes v. Garnett*, No. 25-1373, 2026 WL 2086187, at *1 (7th Cir. July 20, 2026). Moreover, to the extent he is seeking

---

[2] This decision was recently affirmed on appeal. *Stokes v. Garnett*, No. 25-1373, 2026 WL 2086187, at *1 (7th Cir. July 20, 2026).

monetary damages related to such a claim, he cannot do so "unless or until the imprisonment is declared invalid by an appropriate tribunal." *Stokes*, 2025 WL 580863, at \*2.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED WITHOUT PREJUDICE as frivolous pursuant to 28 U.S.C. § 1915A.

SO ORDERED on July 23, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT

7